E-FILED
Monday, 07 July, 2014   11:21:09 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY G. HARRIS, | ) |
| Plaintiff, | ) |
| v. | ) 11-CV-3074 |
| J.R. WALLS, et al., | ) |
| Defendants. | ) |

## OPINION

COLIN STIRLING BRUCE, U.S. District Judge.

Plaintiff, proceeding pro se from his incarceration in Menard Correctional Center, claims that Defendants retaliated against him for pursuing a lawsuit challenging the alleged excessive soy in the prison diet and for helping other inmates file prison grievances seeking a soy-free diet.

Defendants move for summary judgment. Because a rational juror could not find that Defendants retaliated against Plaintiff for Plaintiff's exercise of a protected First Amendment right, the motion will be granted. Defendants took their actions because they reasonably concluded that Plaintiff was encouraging other inmates

1

to file false grievances. There is no First Amendment right to file a false grievance or to help an inmate do so.

**FACTS**

At the summary judgment stage, the evidence is viewed in the light most favorable to Plaintiff, with material factual disputes resolved in Plaintiff's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In August of 2007, Plaintiff filed a motion for a temporary restraining order in the Central District of Illinois, seeking a soy-free diet. <u>Harris v. Brown</u>, 07-CV-3225 (Judge Harold A. Baker presiding). <u>Harris v. Brown</u> is still pending and has become a general challenge to the alleged excessive soy in the prison diet, though the case is not a class action. Many other inmates have tried to join the suit, but appointed counsel has agreed to take the case only as to the listed plaintiffs. <u>Id.</u>, 8/19/09 text order.

Eventually the Weston A. Price Foundation took an interest in Plaintiff's soy case. According to its website, the Foundation is a nonprofit organization based in Washington, D.C., which advocates for "nutrient-dense whole foods" and animal fats, foods that the Foundation maintains are essential for optimum health based on

the research of Dr. Weston Price.  www.westonaprice.org (last visited 6/24/14).  The Foundation's website has a page devoted to concerns over the safety of soy.  Another page describes Plaintiff's soy lawsuit and the Foundation's efforts to prove that excessive soy served in prison meals causes health problems.  Id.  Sally Fallon Morell (sometimes referred to as "Sally Fallon" in the record) is listed on the website as the Foundation's President.

In July of 2008, Sally Fallon Morell sent Plaintiff $750.  According to Plaintiff, this money helped him buy food at the commissary and supplies to write his nonfiction book "Never Ending Nightmare," which can be found on prisonsfoundation.org (last visited 6/24/14).  The docket sheet in Plaintiff's soy case reflects that the Foundation secured counsel for Plaintiff in December of 2008.  (12/10/08 minute entry.)

On or about May 1, 2009, Sally Fallon Morell mailed documents to Plaintiff which showed the information posted or to be posted on the Foundation's website regarding Plaintiff's soy case and the health problems caused by soy.  The information also described how others could help join the challenge to the alleged excessive soy in the prison diet.  (Pl.'s Resp., 93-1, pp. 30.47.)

Plaintiff agrees that in May of 2009, while Plaintiff was incarcerated in Western Illinois Correctional Center, "Defendant Ashcraft investigated reports from prison officials and confidential informants that Plaintiff had been encouraging other offenders in his housing unit to misrepresent their medical conditions in grievances and to the federal court in relation to the meals . . . ."  (Defs.' Undisputed Fact 8, d/e 8, agreed to in Pl.'s Resp., d/e 93, p. 9.) Plaintiff was placed in investigative segregation on May 8, 2009.

Plaintiff asserts that, as he was being placed in investigative segregation, Defendant Ashcraft said, "What is your fucking problem here.  These niggers had no idea what hypothyroidism was.  You had to open your mouth and educate them.  Now they are all filing grievances on it."  (d/e 93, p. 15.)  According to Plaintiff, Defendant Jennings was also present and said ". . . You was [sic] warned.  This is my joint and you are the fuck out of here smart ass." Id.[1] Plaintiff also asserts that, at some other time Defendant Walls told him, "Harris, you are getting your no-soy diet, your medical

---

[1] Plaintiff also asserts other statements were made by Defendant Jennings about what Defendants Walls and Ashby said, but those statements are hearsay.  The purported statements by Ashcraft, Jennings, and Walls set forth above are admissible as admissions by party opponents.  Fed. R. Evid. 801(d)(2)(A).

4

treatment now. You need to shut up and leave the pen alone." (d/e 93, p. 21).

During the investigation, Defendant Ashcraft obtained statements from confidential informants. All but one corroborated reports that Plaintiff was encouraging the filing of false grievances. Plaintiff sought the identities of the informants in this action, but Judge Myerscough ruled that the identities would not be disclosed to Plaintiff due to security concerns, a ruling with which this Court agrees. *See* <u>Whitford v. Boglino</u>, 63 F.3d 527, 535 (7th Cir. 1995)(prison disciplinary board may consider information from reliable confidential informants "because 'revealing the names of informants . . . could lead to the death or serious injury of. . . . the informants.'")(quoted cite omitted).[2] As Judge Myerscough pointed out, Plaintiff did have access to the names of the inmates who had filed grievances requesting a soy diet, to copies of those grievances, and to the substance of the statements by the confidential informants, which were set forth in the disciplinary report written against Plaintiff.

---

[2] The confidential informant statements are filed under seal at docket entry 71.

5

From April 1, 2009 to May 5, 2009, at least ten different inmates on Plaintiff's wing filed separate grievances requesting a soy-free diet.  (Pl.'s Resp., 93-1, pp. 6-23.)  The grievances were not identically worded, but all requested a soy-free diet.  <u>Id.</u>

Plaintiff admits that he helped other inmates file grievances, but he denies that he encouraged any inmates to falsely complain about their symptoms.  According to Plaintiff, the other inmates sought out Plaintiff's help because they in good faith believed they were experiencing physical symptoms potentially caused by the soy.

However, Plaintiff admits that he instructed an inmate named Charles Palmer on "what [Palmer] had to prove up to get a soy free diet" by giving Palmer the following typed note (Plaintiff's Resp. p. 11, d/e 93):

> To get Soy Free Diet must prove up medical condition of HYPOTHYROIDISM---Blood test on TSH, TS, LIPID LEVELS.  Symptoms (Pervasive fatigue / drowsiness / forgetfulness/trouble concentrating/difficulty learning/dry, brittle hair / dry, itchy skin / puffy face / constipation/sore muscles/low body temperature, cold all the time / weight gain and water retention/severe gas and bloating / bleeding from bowels when using toilet, developing hemorrhoids.
>
> Also prove up Hashimoto's Thyroiditis/same symptoms

6

> Get test for allergy to soy. Hard to prove with blood test, unreliable with blood test, need patch test on skin.
>
> Once you prove up any condition here soy exacerbates these conditions, and a soy free diet is required.
>
> Put in to see sick call. State your symptoms and get the process started. When you see Dr. Shah play smart and do not let him bullshit you. Put the symptoms you suffer in his face and tell him if he does not treat your condition you will need his name, rank, and position for lawsuit action.

(Pl.'s Resp., 93-1 p. 25, labeled "Supp. 018.") Plaintiff further admits that this note was found in Palmer's cell as part of the investigation. Id. p. 11.

On or about May 14, 2009, Plaintiff's counsel in Plaintiff's soy case sent a letter to Defendant Warden Walls, asserting that Ashcraft and Jennings were retaliating against Plaintiff because of the grievances filed by other inmates seeking a soy-free diet. (d/e 93-1, p. 28.)

On May 24, 2009, a disciplinary report was issued to Plaintiff, accusing Plaintiff of: 1) giving false information to an employee (rule 303); 2) unauthorized petitions, postings, and business ventures (rule 309); and, 3) aiding and abetting, attempt, solicitation, or

7

conspiracy (rule 601). (Exhibit attached to Complaint, d/e 1-1, pp. 304.) The report states:

> This disciplinary report is being completed after Internal Affairs received information and conducted interviews into allegations that Inmate Harris N57672 was typing grievances over the soy product in the food and having other inmates sign and turn in the grievances. Also, Health Care received 11 grievances from R-2 B wing, some were typed and some were hand written but all were worded exactly the same. . . . Internal Affairs received a note from R-2-B wing stating the guy in 27 has a load of people writing his judge jumping on a soy food lawsuit. These guys are going to sick call saying they have problems, certain problems the guy in 27 wrote down for them to say and start a paper trail. Harris was identified as the guy assigned to R-2 B 27 and was interviewed about the allegations. Harris stated he had nothing to do with the letter[3] being circulated . . . and stated he gives his lawyer's name out and a judge but that's it. Harris further stated that people come to him every day wanting help with a complaint about soy, but he tells them they need to do it on their own. Confidential Source #1 stated in an interview that he complained one day about his stomach and Harris told him it was the soy diet. C/S #1 further stated the Harris typed two other grievances that he knew of and gave them to other inmates on the wing and told them this is what you need to put in your grievances about the soy diet. C/S #1 also stated that Harris is passing out the name and phone number of a judge so that enough guys will file lawsuits to make it a class action lawsuit against the soy diet. Confidential Source #2 stated in a separate interview that Harris had

---

[3] Defendant Ashcraft avers that during his investigation he found a typed letter which had been disseminated on Plaintiff's wing "encouraging the filing of grievances and describing the exact symptoms to allege in medical grievances." (Ashcraft Aff. para. 6, d/e 87-1, p. 2.) Defendant Ashcraft does not say whether the typed letter was the note which Plaintiff admits authoring or the letter mailed from Sally Fallon Morrell to Plaintiff in early May, 2009, or some other document. It is undisputed, though, that Plaintiff's note was discovered in inmate Palmer's cell.

typed the grievance for him and that Harris is always pushing the soy issue on everyone telling them how bad it is for them.  C/S #2 further stated Harris is telling all the guys to file grievances about the soy diet and to request a soy free diet.  Confidential Source #3 stated that Harris also typed grievances for some of the other guys and if the grievances are typed Harris did it.  Confidential Source #4 stated some guy just took the typed grievances and turned them in but he copied his off the grievance that Harris had given him.  All confidential sources are being deemed reliable due to their statements corroborating each others' and each statement was given in separate interviews.  The identities of the confidential sources are being withheld for safety and security of the institution. . . . Based on the interviews it is substantiated that Harris gave false information to Internal Affairs about his involvement with the grievances on R-2 B wing.  It is also substantiated that Harris was attempting to unite other inmates in a concerted effort to file false grievances and make unsupported allegations about health issues and the food at the facility . . .

At Plaintiff's disciplinary hearing on May 24, 2009, Defendants Ashby and Pool found Plaintiff guilty of all three charges, relying on the internal affairs report.  (Adjustment Committee Final Summary Report, d/e 87-1, pp. 16-16.)  They noted that, according to the report, Plaintiff was involved with "multiple offenders that were writing grievance[s] about the soy diet products" and "getting them to go to health care and complain about there [sic] diet issue," trying to "get a class action lawsuit against IDOC," and that Plaintiff had

9

been "warned before about trying to get other offenders involved in business adventures [sic] on 1-28-09 History." Id.[4]

Defendant Walls' designee signed off on the Committee's findings on June 1, 2009. Id. Plaintiff was punished with three months of grade demotion and segregation, a disciplinary transfer, and the revocation of three months of good time credit. Plaintiff has since had his good time restored, but the disciplinary findings stand.

**ANALYSIS**

Defendants cannot retaliate against Plaintiff for exercising his protected First Amendment rights. To survive summary judgment on this claim, Plaintiff must have evidence which would allow a rational juror to find that Defendants' actions were motivated, at least in part, by a desire to retaliate against Plaintiff for exercising a First Amendment right and that Plaintiff suffered a deprivation significant enough to deter future First Amendment activity. *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If Plaintiff clears this hurdle, then Defendants must rebut the inference of retaliation with evidence that they would have taken the same action regardless

---

[4] Plaintiff had been written a ticket on 1/28/09 for unauthorized business ventures for trying to get business cards made.

of any retaliatory motive.  Id.  Plaintiff must then have evidence that Defendants' innocent explanation is false.  *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

Defendants do not dispute that Plaintiff's punishment was significant enough to garner constitutional attention.  The next step is to determine whether Plaintiff's actions were protected by the First Amendment.  The actions at issue here are:  1) Plaintiff's pursuit of his soy case; and, 2) Plaintiff's assistance to other inmates with filing grievances requesting a soy-free diet.

Plaintiff's pursuit of his own soy case is clearly protected by the First Amendment.  Prisoners have a First Amendment right to petition for redress of grievances by pursuing nonfrivolous claims in court.  *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009).

As to helping other inmates with their grievances, Plaintiff does not argue, nor could a reasonable argument be advanced, that Plaintiff has a First Amendment right to help inmates file *false* grievances.  False prison grievances waste limited prison resources, reducing staff and resources available to help prisoners with real needs.  False prison grievances can also be filed to harass prison employees and for other improper purposes.  *See Hale v. Scott*, 371

11

F.3d 917 (7th Cir. 2004)(inmate's grievance alleging unsubstantiated rumor of employee sexual misconduct was not protected speech).

Plaintiff does contend that he has a First Amendment right to help inmates with *true* grievances. He contends that is what he did here: help inmates who in good faith believed that they suffered from symptoms consistent with soy intolerance.

Whether Plaintiff had a First Amendment right to help other inmates write grievances is unclear. On one hand, the Seventh Circuit has upheld the IDOC's rule against unauthorized petitions and postings, which, in essence, is the kind of unauthorized organized activity Defendants were concerned about after receiving at least 10 grievances from Plaintiff's housing unit, all seeking a soy-free diet.[5] *See May v. Libby*, 256 Fed.Appx. 825, 829 (7th Cir. 2007)("Banning petitions to maintain control over group activity by prisoners is a reasonable response to a legitimate penological concern."), *citing Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005); *Gayle v. Gonyea*, 313 F.3d 677, 680 (2d Cir. 2002)(observing in dicta that "encouraging other inmates to file grievances" is "an

---

[5] Defendants argue about their legitimate need to prohibit "business ventures," but they do not explain how Plaintiff's actions amounted to a "business venture" or what the business venture was.

arguably comparable type of organizing" to circulating a petition in prison). Plaintiff's attempt to organize opposition to the soy is analogous to collecting inmate signatures on a petition.

On the other hand, the Seventh Circuit has held that retaliation against an inmate for helping other inmates access the courts states a First Amendment claim. *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1995)("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under Section 1983."), *quoted with approval by Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *contra Perotti v. Quinones*, 488 Fed.Appx. 141, 2012 WL 2855771*146 (7th Cir. 2012)(not published in Federal Reporter)("[I]nmates do not have a constitutional right to provide legal assistance to other inmates."). Educating an inmate about the symptoms and diagnosis of soy intolerance would arguably be a necessary step in helping that inmate exhaust administrative remedies before filing a lawsuit. 42 U.S.C. Section 1997e(a)(exhaustion of prison administrative remedies required before filing federal lawsuit).

13

Additionally, Plaintiff's communications with the other inmates should arguably be subject to the same analysis as any other inmate-to-inmate communication. The Supreme Court held in <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001) that an inmate's First Amendment claim arising from his punishment for sending a letter with legal advice to another inmate was subject to the same legal analysis as any other restriction on inmate-to-inmate communication: whether the restriction on the communication was "'reasonably related to legitimate penological interests." 532 U.S. at 232, *citing Turner v. Safley*, 482 U.S. 78, 89 (1987).

For purposes of this Order the Court assumes without deciding that, in general, inmates have a protected First Amendment right to assist other inmates with truthful grievances, subject to legitimate penological interests. <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001)("*Turner* provides the test for evaluating prisoners' First Amendment challenges" regardless of whether the speech at issue is legal advice or not). Defendants assert that they are entitled to qualified immunity, but their argument is undeveloped because they do not discuss *Shaw* or *Higgason*.

Qualified immunity is beside the point here anyway, because no rational juror could find that Plaintiff's pursuit of his soy case or his attempt to help other inmates file truthful grievances was a motivating factor behind Defendants' actions. Plaintiff himself agrees that the investigation was initiated because of reports that Plaintiff was encouraging other inmates to *misrepresent* their medical conditions in court and in grievances. (Defs.' Undisputed and Agreed Fact 8, d/e 87, p. 3.) Plaintiff has no evidence that Defendants were concerned with *truthful* grievances. The entire investigation, disciplinary report, and disciplinary hearing were focused on Plaintiff's involvement in the filing of *false* grievances for a soy-free diet, which is not a protected First Amendment activity. The purported admissions by Defendants Jennings, Ashcraft, and Walls do not suggest that Defendants thought Plaintiff was helping other inmates file honest grievances.

In any event, even if retaliation for Plaintiff's soy case or help with truthful grievance was a motivating factor in Defendants' actions, Defendants would have taken the same actions regardless of that animus. The investigation began because of reports that Plaintiff was encouraging other inmates to file false grievances, and

it is undisputed that at least ten grievances seeking a soy-free diet were filed around the same time, all from Plaintiff's wing. More importantly, Plaintiff admitted that he authored and gave to inmate Palmer the note about "proving up" the need for a soy-free diet. That note was reasonably interpreted by Defendants as an attempt by Plaintiff to instruct Palmer how to file a false grievance seeking a soy-free diet. Why was it necessary for Plaintiff to detail the symptoms of soy intolerance to Palmer? If Palmer had been suffering from physical symptoms, Palmer could have reported those symptoms himself to the doctor without prompting from Plaintiff. Judge Myerscough and the IDOC granted Plaintiff's request to correspond with Palmer for purposes of this case,[6] but Plaintiff offers nothing from Palmer or even asserts that he tried to communicate with Palmer. In any event, an exonerating statement from Palmer would not matter, because the Court would still conclude that Defendants' interpretation of Plaintiff's note was reasonable.

---

[6] On September 10, 2013, Plaintiff filed a motion to correspond with inmates Charles Palmer and Elton Mitchell and also asked to send interrogatories to the confidential informants. Judge Myerscough granted Plaintiff's motion to correspond with Palmer but, due to security concerns, denied the motion as to the confidential informants. (11/4/13). The IDOC refused to disclose inmate Mitchell's address, because Mitchell had been released on parole. (d/e 82, para. 4.) On November 21, 2013, Plaintiff filed another motion listing additional inmates with whom he wished to correspond (89). That motion was denied as untimely because discovery had closed (12/13/2013 text order.)

Plaintiff contends that his note was intended only to explain what needed to be proved to obtain a soy-free diet and that he never instructed any inmate to claim false symptoms. Plaintiff's intentions are irrelevant so long as Defendants' reasonably interpreted Plaintiff's note as an encouragement to file false grievances. To find otherwise would be to ignore the deference owed to prison officials. *See Shaw*, 532 U.S. at 232 (prisoner cannot prevail on First Amendment claim challenging punishment for letter unless he overcomes "presumption that the prison officials acted within their 'broad discretion.'")(quoted cite omitted).

This conclusion is supported by the Seventh Circuit's unpublished opinion in *May v. Libby*, 256 Fed.Appx. 825 (7th Cir. 2007)(not published in Federal Reporter). The Seventh Circuit in *Libby* upheld judgment as a matter of law on a prisoner's claim that the defendants had retaliated against him for sending to one of the defendants a copy of the prisoner's letter to a clerk asking how to pursue charges against that defendant. The Seventh Circuit rejected the prisoner's argument that the defendants' interpretation of his letter as a threat was unreasonable. The Court reasoned:

on these facts we cannot conclude that it was unreasonable for the defendants to view the seemingly utterly gratuitous copy of May's letter as a veiled threat. *See generally Koutnik v. Brown*, 456 F.3d 777, 785 (7th Cir. 2006)(explaining that we owe substantial deference to the professional judgments of prison administrators).

Like *May v. Libby*, the issue in this case is whether Defendants' "perception was reasonable," not on Plaintiff's subjective intentions. 256 Fed.Appx. at 829. Defendants' perception was reasonable based on Plaintiff's note alone. *See also Felton v. Huibregtse*, 525 Fed.Appx. 484 (7th Cir. 2013)(not published in Federal Reporter)(letter to warden which might have been reasonably construed as calling the warden an idiot was not protected speech, even if the letter was also subject to a benign interpretation);[7] *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010)(no First Amendment retaliation claim if speech at issue is inconsistent with legitimate penological goals).

The statements by the confidential informants also support Defendants' conclusion that Plaintiff was encouraging other inmates to file grievances falsely claiming the need for a soy diet. Plaintiff assails his inability to challenge these confidential statements by

---

[7] The Court recognizes that *Libby* and *Felton* are not precedential because they were not published in the Federal Reporter, 7th Cir. R. 32.1, but the reasoning in the cases is persuasive.

questioning the informants. The challenge is immaterial; the Court does not need to rely on the confidential statements. Plaintiff's note to Palmer was enough, along with the other grievances filed requesting a soy free diet all from Plaintiff's wing during the same time frame, to reasonably conclude that Plaintiff was encouraging other inmates to file false grievances.

In short, the Court cannot discern a material factual dispute for the jury to resolve. This case does not present a swearing match about a material fact. *Cf. May v. Springborn,* 575 F.3d at 650 (retaliation claim turned on credibility of parties). This case is about whether Defendants' reasonably interpreted Plaintiff's note, a question for the Court, not the jury. *May v. Libby, supra; Beard v. Banks*, 548 U.S. 521, 528 (2006)("[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'")(quoted cite omitted). Summary judgment is therefore granted to Defendants.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment is granted (d/e 86). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are

19

denied as moot (d/e's 101-105), and this case is terminated, with the parties to bear their own costs.  All deadlines and settings on the Court's calendar are vacated.

    2.     If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal.  See Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

    ENTER:  July 7, 2014

    FOR THE COURT:

                               **s/Colin Stirling Bruce**
                                COLIN STIRLING BRUCE
                        UNITED STATES DISTRICT JUDGE